# REDACTED OPINION

# In the United States Court of Federal Claims

**No. 15-158C**
**Filed: April 2, 2015**
**Redacted Version Issued for Publication: May 7, 2015[1]**

* * * * * * * * * * * * * * * * * *

VISUAL CONNECTIONS, LLC,

                Protestor,

v.

UNITED STATES,

                Defendant,

v.

KNIGHT POINT SYSTEMS, LLC,

                Defendant-Intervenor.

                                * Post-Award Bid Protest;
                                * Jurisdiction; Failure to State a Claim;
                                * Waiver; Ambiguity.

* * * * * * * * * * * * * * * * * *

    **Cyrus E. Phillips, IV**, Albo & Oblon, L.L.P., Arlington, Virginia, for protestor.

    **Shari A. Rose**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her were **Benjamin C. Mizer,** Acting Assistant Attorney General, Civil Division, and **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch.

    **Thomas O. Mason**, Cooley, LLP, Washington, D.C., for intervenor.

---

[1] This opinion was issued under seal on April 2, 2014. The parties were asked to propose redactions prior to public release of the opinion. This opinion is issued with some of the redactions that the parties proposed in response to the court's request. Words which are redacted are reflected with the following notation: "[redacted]."

# O P I N I O N

**HORN, J.**

## FINDINGS OF FACT

Protestor, Visual Connections, LLC (Visual Connections), filed a post-award bid protest in the above captioned case on February 19, 2015, protesting the United States Department of Health and Human Services (HHS), Agency for Healthcare Research and Quality's (AHRQ) award of a task order to Knight Point Systems LLC (Knight Point).[2]

On June 26, 2014, AHRQ issued Request for Quote No. AHRQ-15-10003 (RFQ). The RFQ sought quotations from "service-disabled veteran-owned small businesses holding Federal Supply Schedule (FSS) 70 contracts with the General Services Administration (GSA)." The RFQ indicated that, "[t]he purpose of this task order is to maintain agency production systems as well as the architectural, engineering, configuration management, and hosting services needed to support those systems. The contractor shall provide support for application operations and maintenance, and testing and deployment of complex technologies into the existing IT environment." The period of performance was for a "Base Period of 12 months with four, 12 month option periods."

The "Quote Review Criteria and Evaluation" indicated that

[e]valuation of responses to the RFQ will consider both technical and cost factors. Both the technical response and business response will be evaluated based on the extent to which they follow the technical and business response instructions in section 7 [Quote Requirements] of this RFQ. The quote(s) representing the best value will be selected.

Regarding the technical response, the RFQ indicated that "[o]fferors will be evaluated on how well they address vendor capacity, expertise, and understanding of conformance issues with the stated accessibility requirements." For the evaluation of the technical response, the RFQ identified 100 points, with 40 points for "UNDERSTANDING THE PROJECT AND TECHNICAL APPROACH," 20 points for "CORPORATE AND PERSONNEL QUALIFICATIONS AND EXPERIENCE," and 40 points for "MANAGEMENT AND STAFFING PLAN." (all capitalization in original). Regarding price, the RFQ indicated that "[b]usiness responses will be evaluated for price reasonableness. An analysis will be conducted to determine whether the proposed effort is realistic for the

---

[2] On February 23, 2015, the court granted Knight Point's motion to intervene. Despite moving to intervene, Knight Point filed two notices with the court, first indicating that it did "not intend to file its own motion to dismiss," and in the second notice indicating that it did "not intend to file its own submission regarding the decision issued by United States Court of Appeals for the Federal Circuit in *Bannum v. United States*, No. 2014-5085 (March 12, 2015)." In the second notice, Knight Point indicated that "Knight Point did not file a motion to dismiss separate from the Defendant's motion, and accordingly will defer to the Government to address the impact of the *Bannum* decision on its waiver arguments."

work to be performed; reflect a clear understanding of the requirements; and consistent with the unique methods of performance described in the offeror's technical response. This analysis is intended to determine the degree to which the quote is fair and reasonable." The parties agree that the RFQ did not address the relative importance of the price and non-price factors.

In its complaint, Visual Connections indicates that the "Request for Quotations Number AHRQ-15-10003 was issued on June 26th, 2014, and Quotations were received on July 28th, 2014. The announced Evaluation Factors were not challenged before the date and time set for receipt of Quotations." Five offerors, including protestor and intervenor, submitted proposals.  The Source Selection Determination indicated that "[t]he technical evaluation was conducted on August 5, 2014 by an internal review panel consisting of persons with background and experience in the field covered by this procurement. The quotes were reviewed and scored based upon the criteria listed in the RFQ." Protestor received an evaluated score of 81.25, and an evaluated price of $13,947,748.00 for the base year and the four option years. Intervenor received the highest evaluated score, 90.25, and had an evaluated price of $19,958,456.00 for the base year and the four option years.[3]

The Source Selection Determination also indicated that:

The solicitation stated that the award would be made to the offeror that presents the best value to the Government based on two factors: 1) Technical and 2) Price. Although the price quoted by Knight Point Systems is higher than all other offerors, except [redacted], their technical response was significantly superior to all other offerors. KPS' [Knight Point Systems] proposed cost outlined in their business response was reasonably under AHRQ's independent government cost estimate, which the government deemed fair and reasonable based off of current and historical data. Furthermore, their proposed labor mix and commitment to retain senior staff demonstrated their complete understanding of the project and the skill sets required to ensure IT service delivery for the four defined task areas. Personnel were the largest evaluation factor and KPS presented by far the highest caliber of personnel with all required skill sets and certifications. Additionally, the hours proposed and cost were in direct line with the government's estimate for the scope of work. Conversely, the four other Offeror's cost and technical responses demonstrated they did not possess an accurate or complete understanding of the project. In some instances either the cost or overall hours bid were not consistent or in line with government estimates, which were determined using significant historical data from previous contracts, for the scope of work defined in the SOW [Statement of Work]. The Knight Point Systems response is technically superior to all other offerors. Although their quote was offered at a higher total estimated price, the technical benefits of their response outweigh the

_____

[3] The Independent Government Cost Estimate for the base year and the four option years was $[redacted].

technical deficiencies and risks presented by the other offerors despite their lower costs. It is determined that the response submitted by Knight Point Systems represents the best value to the Government. Based on the above, the Contracting Officer selects Knight Point Systems for award of this task order in the total amount of $27,458,456. The base period amount funded at time of award is $3,991,691.20.

The Task Order Officer's Award Recommendation Memo, included as an attachment to the Source Selection Determination, indicated that, regarding Visual Connections:

> The Visual Connections (VC) Team proposed a team of incumbent contractors and staff that have knowledge of the applications, policies, procedures (SDLC, Rational, etc.) and toolset used to support the O&M requirements and activities. However, the VC Team failed to demonstrate a clear understanding of the strategic direction of AHRQ and needs for addressing current challenges faced in the current and future operational environment as related to Shared Services transition, Virtual Infrastructure and electronic processing. The VC Team's response to specific tasks were stated in terms of prior support accomplishments rather than providing an approach to performing or improving task performance as requested in the SOW. In terms of Application Development they discussed an approach to independently foster application development which is not the intention of this task. It is not a requirement to have the contractor seek application development opportunities. In terms of key personnel, VC exposes AHRQ to significant continuity risk by proposing a Lead Architect that is a Database Analyst without the appropriate level of experience or management ability to fulfill this role. They also failed to provide the skills mix required to support effective performance of the SOW Tasks.

Regarding Visual Connections, in its trade off analysis, the agency indicated:

> After careful review, VC Team's cost proposal highlighted some challenges that would affect their ability to successfully perform the tasks outlined in the SOW. For instance, the Visual Connections Team proposed a staffing level of [redacted] FTE's [Full Time Equivalent] ([redacted] hrs.) at a cost of $[redacted] which is well below the [redacted] FTE's ([redacted] hrs.) historical billings and the government cost estimate of $[redacted]. The low staffing levels proposed by the VC Team present significant risk to AHRQ and directly affect the VC Team's ability to adequately perform the work outlined in the SOW and are considered unrealistic to support existing AHRQ applications. Additionally, the VC Team did not sufficiently address critical requirements outlined in the SOW related to managing and maintaining a storefront capability for Agency publications, administering AHRQ's SharePoint Server environment, and enhancing mobile applications. This is in stark contrast to how KPS accurately provided staff

and a labor mix required to sustain O&M operations on a consistent and uninterrupted basis.

AHRQ awarded Task Order No. HHSA290201500001G to Knight Point on November 5, 2014. Subsequently, Visual Connections filed a protest with the United States Government Accountability Office (GAO). On February 13, 2015, the GAO denied the protest.[4] Thereafter, on February 19, 2015, Visual Connections filed its protest in the United States Court of Federal Claims. Before this court, protestor claims:

> This Civil Action is brought to obtain a Declaration that the United States Department of Health & Human Services, Agency for Healthcare Research and Quality's (AHRQ's) decision to award to Knight Point the labor-hour GSA Task Order Contract proposed by Request for Quotations Number AHRQ-15-10003 lacks a rational basis and is neither reasonable nor lawful because Request for Quotations Number AHRQ-15-10003 does not disclose, as required by 41 U.S.C. § 3306(c)(1)(C), the relative importance of the announced Price and non-Price evaluation factors.

Protestor claims that "AHRQ's noncompliance with the Statutory mandate of 41 U.S.C. § 3306(c)(1)(C) left these Offerors guessing about the weighting of all of the announced Evaluation Factors relative to evaluated total Prices."

On February 27, 2015, defendant filed a motion to dismiss[5] protestor's complaint pursuant to Rule 12(b)(6) (2014) of the Rules of the United States Court of Federal Claims (RCFC). Defendant claims that "Visual Connections acknowledges that it did not raise its

---

[4] The GAO decision denied the protest on the merits. In a footnote, the GAO indicated, "Visual also complains that the RFQ did not indicate the relative importance of the price and non-price evaluation factors. This complaint, submitted after quotations were submitted, is not timely filed and will not be considered." (citing 4 C.F.R. § 21.2(a)(1) (2014)).

[5] Although defendant filed a motion to dismiss, it did not seek dismissal on the ground that protestor was challenging the award of a task order. As defendant indicated in a notice to the court, "GSA FSS task order purchases, such as the RFQ here, are distinct from contracts entered into by executive agencies under FASA [Federal Acquisition Streamlining Act]. FASA provisions do not affect or apply to acquisitions conducted under the GSA FSS, FAR Part 8.4." As indicated in Innovative Management Concepts, Inc. v. United States, 119 Fed. Cl. 240 (2014), "FASA confines the court's jurisdiction to adjudicate claims that challenge the underlying procurement vehicle, not any subsequent specific task order or award." Id. at 245 (citing SRA Int'l, Inc. v. United States, 766 F.3d 1409, 1413 (Fed. Cir. 2014)). Visual Connections agrees with defendant, indicating that "[t]his Court's jurisdiction to hear and consider this Post-Award Procurement Protest is not precluded by 41 U.S.C. § 4106(f) which vests with the United States Government Accountability Office (GAO) exclusive jurisdiction to hear and consider Procurement Protests concerning Competitions for individual Task Orders conducted under Task Order Contracts."

challenge to the terms of the RFQ prior to the deadline for the submission of quotes." Therefore, defendant argues, "[b]y failing to file its protest prior to AHRQ's receipt of quotes, Visual Connections waived its right to challenge the terms of the RFQ." In response, protestor argues that the "Acquisition was unlawful," and, therefore, waiver does not apply. Alternatively, protestor argues that the RFQ was facially ambiguous and did not trigger a duty to inquire before submission of proposals.

## DISCUSSION

Defendant's motion to dismiss for failure to state a claim alleges that "Visual Connections failed to make a timely objection to the terms of the RFQ, and, consequently, waived its challenge." (footnote omitted). It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); see also Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."); Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990))); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy." Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817, 824 (2013); see also Arbaugh v. Y & H Corp., 546 U.S. at 506 ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506–07)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte*, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.),

cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006); see also Avid Identification Sys., Inc. v. Crystal Import Corp., 603 F.3d 967, 971 (Fed. Cir.) ("This court must always determine for itself whether it has jurisdiction to hear the case before it, even when the parties do not raise or contest the issue."), reh'g and reh'g en banc denied, 614 F.3d 1330 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 909 (2011).

In examining what must be pled in order to state a claim, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2) (2014); Fed. R. Civ. P. 8(a)(2) (2015); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Supreme Court stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [Conley v. Gibson, 355 U.S. 41, 47 (1957)]; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely") . . . . [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, 550 U.S. at 555–56, 570 (footnote and other citations omitted; omissions in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–57, 570); A&D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1157 (Fed. Cir. 2014); Bell/Heery v. United States, 739 F.3d 1324, 1330 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); Kam-Almaz v. United States, 682 F.3d 1364, 1367 (Fed. Cir. 2012) ("The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354–55 (Fed. Cir.), cert. denied, 131 S. Ct. 92 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege

facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 557)), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2009), <u>cert. denied</u>, 561 U.S. 1006 (2010); <u>Cambridge v. United States</u>, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 570)); <u>Cary v. United States</u>, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555, 570)), <u>reh'g denied</u> (Fed. Cir.), <u>cert. denied</u>, 557 U.S. 937 (2009); <u>Vargas v. United States</u>, 114 Fed. Cl. 226, 232 (2014); <u>Fredericksburg Non-Profit Housing Corp. v. United States</u>, 113 Fed. Cl. 244, 253 (2013), <u>aff'd</u>, F. App'x 1004 (Fed. Cir. 2014); <u>Peninsula Grp. Capital Corp. v. United States</u>, 93 Fed. Cl. 720, 726–27 (2010), <u>appeal dismissed</u>, 454 F. App'x 900 (Fed. Cir. 2011); <u>Legal Aid Soc'y of New York v. United States</u>, 92 Fed. Cl. 285, 292, 298, 298 n.14 (2010).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. <u>See Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555–56 (citing <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 508 n.1 (2002)))); <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974) ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), <u>abrogated on other grounds by Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), <u>recognized by Davis v. Scherer</u>, 468 U.S. 183, 190 (1984); <u>United Pac. Ins. Co. v. United States</u>, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006); <u>Samish Indian Nation v. United States</u>, 419 F.3d 1355, 1364 (Fed. Cir. 2005); <u>Boise Cascade Corp. v. United States</u>, 296 F.3d 1339, 1343 (Fed. Cir.), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2002), <u>cert. denied</u>, 538 U.S. 906 (2003).

Defendant indicates that protestor's "sole challenge" is that the RFQ did not disclose the "'relative importance of the announced Price and non-Price factors.'" Defendant alleges that "[b]y failing to file its protest prior to AHRQ's receipt of quotes, Visual Connection waived its right to challenge the terms of the RFQ," because, citing to <u>Blue & Gold Fleet, L.P. v. United States</u>, 492 F.3d 1308, 1313 (Fed. Cir. 2007), "[a]n offeror must challenge the terms of the RFQ prior to the due date for quote submission or else the plaintiff waives such an argument."

In <u>Blue & Gold Fleet, L.P. v. United States</u>, 492 F.3d 1308, the United States Court of Appeals for the Federal Circuit addressed if an offeror had the opportunity to object to a patent error in the terms of a solicitation, but failed to do so, did the offeror waive the right to challenge that same error in a subsequent bid protest. <u>See id.</u> at 1313. The Federal Circuit noted that decisions of the Court of Federal Claims had concluded "that

where there is a 'deficiency or problem in a solicitation . . . the proper procedure for the offeror to follow is not to wait to see if it is the successful offeror before deciding whether to challenge the procurement, but rather to raise the objection in a timely fashion.'" Blue & Gold Fleet, L.P. v. United States, 492 F.3d at 1314 (quoting N.C. Div. of Servs. for the Blind v. United States, 53 Fed. Cl. 147, 165 (2002), aff'd, 60 F. App'x 826 (Fed. Cir. 2003)) (omission in original); see also Draken Int'l, Inc. v. United States, No. 14-1005C, 2015 WL 644055, at *7 (Fed. Cl. Feb. 13, 2015). In Blue & Gold, the Federal Circuit held:

> [A] party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.

Blue & Gold Fleet, L.P. v. United States, 492 F.3d at 1313; see also Universal Marine Co., K.S.C. v. United States, No. 14–1115C, 2015 WL 545861, at *8 (Fed. Cl. Feb. 10, 2015); Northeast Constr., Inc. v. United States, 119 Fed. Cl. 596, 609 (2015); Innovative Mgmt. Concepts, Inc. v. United States, 119 Fed. Cl. 240, 245 (2014); CliniComp Int'l, Inc. v. United States, 117 Fed. Cl. 722, 737-38 (2014) ("The rule in Blue and Gold Fleet thus bars a protester from raising objections to patent errors or ambiguities in the terms of a solicitation after the closing of bidding if such errors or ambiguities were apparent on the face of the solicitation," and "[w]hen a solicitation contains a patent ambiguity, the offeror has '"a duty to seek clarification from the government, and its failure to do so precludes acceptance of its interpretation"' in a subsequent court action." (quoting Blue & Gold Fleet L.P. v. United States, 492 F.3d at 1313 (quoting Stratos Mobile Networks USA, LLC v. United States, 213 F.3d 1375, 1381 (Fed. Cir. 2000)))). The Federal Circuit in Blue & Gold reasoned that such a waiver rule, "requir[ing] that a party object to solicitation terms during the bidding process," furthered the mandate in 28 U.S.C. § 1491(b) that, "'the courts shall give due regard to the interests of national defense and national security and *the need for expeditious resolution of the action*.'" Blue & Gold Fleet, L.P. v. United States, 492 F.3d at 1313 (quoting 28 U.S.C. § 1491(b)(3)) (emphasis in original).

The Federal Circuit also explained:

> "It would be inefficient and costly to authorize this remedy after offerors and the agency had expended considerable time and effort submitting or evaluating proposals in response to a defective solicitation. Vendors cannot sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive award [sic] and then, if unsuccessful, claim the solicitation was infirm."

Id. at 1314 (alteration in original) (quoting Argencord Mach. & Equip., Inc. v. United States, 68 Fed. Cl. 167, 175 n.14 (2005)); see also Bannum, Inc. v. United States, 115 Fed. Cl. 257, 274 (2014).

The Federal Circuit in COMINT Systems Corp. v. United States, 700 F.3d 1377 (Fed. Cir. 2012), extended the logic of Blue & Gold to all pre-award situations, as follows:

In <u>Blue & Gold Fleet, L.P. v. United States</u>, this court held that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection afterwards in a § 1491(b) action in the Court of Federal Claims." [<u>Blue & Gold Fleet, L.P. v. United States</u>,] 492 F.3d 1308, 1315 (Fed. Cir. 2007). Comint points out that <u>Blue & Gold's</u> holding does not explicitly apply to this case since Comint had no opportunity to challenge the solicitation before "the close of the bidding process," Amendment 5 having been adopted after the bidding process closed. Amendment 5 was, however, adopted before the award, and we think the reasoning of <u>Blue & Gold</u> applies to all situations in which the protesting party had the opportunity to challenge a solicitation before the award and failed to do so.

There is no question that Comint could have challenged the solicitation before the award. The Federal Acquisition Regulations require that agency contracting officers "consider all protests . . . *whether protests are submitted before or after award*." 48 C.F.R. § 33.102(a) (emphasis added). If efforts to obtain relief from the contracting officer fail, the Tucker Act specifically authorizes pre-award challenges. The statute gives the Claims Court "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency," and further provides that the Claims Court has jurisdiction "without regard to whether suit is instituted before or after the contract is awarded." 28 U.S.C. § 1491(b)(1).

The same policy underlying <u>Blue & Gold</u> supports its extension to all pre-award situations. In <u>Blue & Gold</u>, we explained:

> In the absence of a waiver rule, a contractor with knowledge of a solicitation defect could choose to stay silent.... If its [ ] proposal loses to another bidder, the contractor could then come forward with the defect to restart the bidding process, perhaps with increased knowledge of its competitors. A waiver rule thus prevents contractors from taking advantage of the government and other bidders, and avoids costly after-the-fact litigation.

[<u>Blue & Gold Fleet, L.P. v. United States</u>,] 492 F.3d at 1314.

To be sure, where bringing the challenge prior to the award is not practicable, it may be brought thereafter. But, assuming that there is adequate time in which to do so, a disappointed bidder must bring a challenge to a solicitation containing a patent error or ambiguity prior to the award of the contract.

COMINT Sys. Corp. v. United States, 700 F.3d at 1382 (footnote omitted; first alteration in original); see also Comm'n Constr. Servs., Inc. v. United States, 116 Fed. Cl. 233, 261-62 (2014) ("[P]arties who have the opportunity to object to the terms of a solicitation containing patent errors or ambiguities and fail to do so in a timely fashion waive their ability to subsequently raise the same objections. . . . The Blue & Gold waiver rule as extended by COMINT is simple: if there is a patent ambiguity or error in the solicitation, a plaintiff must seek redress in court prior to award.").

The Federal Circuit more recently indicated that:

Our waiver rule implements Congress's directive in the Administrative Dispute Resolution Act (ADRA) of 1996, Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874, that courts "shall give due regard to . . . the need for expeditious resolution" of protest claims. 28 U.S.C. § 1491(b)(3); see Blue & Gold, 492 F.3d at 1313. A waiver rule implements this statutory mandate by reducing the need for the "inefficient and costly" process of agency rebidding "after offerors and the agency ha[ve] expended considerable time and effort submitting or evaluating proposals in response to a defective solicitation." Blue & Gold, 492 F.3d at 1314 (internal quotation marks and citation omitted). In this context, clarity is not just readily achievable but important. Requiring that the prescribed formal routes for protest be followed (to avoid waiver) reduces uncertainty about whether the issue is joined and must be resolved, and thereby helps prevent both the wasted and duplicative expenses (of all bidders and the government) and the delayed implementation of the contract that would likely follow from laxer standards of timely presentation of solicitation challenges.

Bannum, Inc. v. United States, 779 F.3d 1376, 1380 (Fed. Cir. 2015).

Visual Connections tries to distinguish its case from the Blue & Gold line of cases, by arguing that because of statutory requirements, Blue & Gold is not applicable.  In the complaint, protestor notes that although

the Federal Circuit concluded that *Blue & Gold Fleet* was a Case of no-harm, no-foul, that "there appear[ed] to be no harm to the intended beneficiaries of the Service Contract Act." This Post-Award Procurement Protest is not a Case of no-harm, no-foul. AHRQ's noncompliance with the Statutory mandate of 41 U.S.C. § 3306(c)(1)(C) left these Offerors guessing about the weighting of all of the announced Evaluation Factors relative to evaluated total Prices, Prices which depended on each Offeror's proposed staffing levels.

To explain why this RFQ is not in compliance with the applicable statutes, protestor first argues that: "Title 41 U.S. Code Chapter 1, Subchapter I-SUBTITLE DEFINITIONS, sets out at 41 U.S.C. § 111 the definition of the term 'Procurement.' This Acquisition being conducted by the United States Department of Health & Human Services is such a

'Procurement.' Title 41 U.S. Code Chapter 33-PLANNING AND SOLICITATION, at 41 U.S.C. § 3305(a)(2) allows the use of Simplified Procedures for small dollar-value commercial purchases." (capitalization in original). Protestor, citing 41 U.S.C. § 3305(a)(2) (2012), claims that "[t]hese Simplified Procedures Acquisitions may not be greater than $5,000,000 and they may require only 'Commercial Items.'" Section 3305 of Title 41, "Simplified procedures for small purchases" provides in part:

> (a) Authorization.--To promote efficiency and economy in contracting and to avoid unnecessary burdens for agencies and contractors, the Federal Acquisition Regulation shall provide for special simplified procedures for purchases of property and services for amounts--
>
> (1) not greater than the simplified acquisition threshold; and
>
> (2) greater than the simplified acquisition threshold but not greater than $5,000,000 for which the contracting officer reasonably expects, based on the nature of the property or services sought and on market research, that offers will include only commercial items.

41 U.S.C. § 3305(a).

Protestor argues that "this Acquisition is greater than $5,000,000, the statutory ceiling for Simplified Procedures Acquisitions. Included in this Acquisition is an unfunded Option for Application Development and this unfunded Option has a labor-hour ceiling Price of $7,500,000."[6] Therefore, protestor claims "[t]he terms of this Request for Quotations themselves demonstrate this Acquisition does not qualify as a Simplified Procedures Acquisition." It is not disputed that the AHRQ acquisition was not a simplified acquisition. Defendant correctly argues that "FSS acquisitions are not simplified acquisitions under 41 U.S.C. § 3305." As noted in Systems Plus, Inc. v. United States, 68 Fed. Cl. 206 (2005), FAR "subpart 13.303–5(b)(1) states that neither the simplified acquisition threshold for the entire contract ($5 million), nor the limitation for individual purchases against BPAs (also $5 million) apply to FSS contracts." Sys. Plus, Inc. v. United States, 68 Fed. Cl. at 210.[7]

---

[6] Protestor refers to CLIN #2, which states, "CLIN 2 is an Optional Line item for Application Development work. This effort is not funded at this time. Should AHRQ need application development projects, an option will be exercised through the issuance of a modification under CLIN 2 (creating additional sub-CLINs). The ceiling amount shown applies to the entire order period."

[7] FAR 13.303–5(b)(1) provides that "[t]he simplified acquisition threshold and the $6.5 million limitation for individual purchases ($12 million for purchases entered into under the authority of 12.102(f)(1)) do not apply to BPAs established in accordance with 13.303– 2(c)(3)." FAR 13.303–5(b)(1) (2014).  FAR 13.303–2(c) provides that "BPAs may be established with . . . (3) Federal Supply Schedule contractors, if not inconsistent with the terms of the applicable schedule contract." FAR 13.303–2(c) (2014).

Protestor alleges that the requirements of 41 U.S.C. § 3306 (2012) apply to the RFQ and asserts, "[h]ad this Acquisition instead publicized, as required by 41 U.S.C. § 3306(c)(1)(C), the relative importance of the announced Price and non-Price evaluation factors, Offerors would have had the opportunity promised them by Statute."

The statute at 41 U.S.C. § 3306 provides, in part:

(b) Contents of solicitation.--In addition to the specifications described in subsection (a), each solicitation for sealed bids or competitive proposals (other than for a procurement for commercial items using special simplified procedures or a purchase for an amount not greater than the simplified acquisition threshold) shall at a minimum include--

(1) a statement of--

(A) all significant factors and significant subfactors that the executive agency reasonably expects to consider in evaluating sealed bids (including price) or competitive proposals (including cost or price, cost-related or price-related factors and subfactors, and noncost-related or nonprice-related factors and subfactors); and

(B) the relative importance assigned to each of those factors and subfactors[.]
                                    . . .
(c) Evaluation factors.--

(1) In general.--In prescribing the evaluation factors to be included in each solicitation for competitive proposals, an executive agency shall--

(A) establish clearly the relative importance assigned to the evaluation factors and subfactors, including the quality of the product or services to be provided (including technical capability, management capability, prior experience, and past performance of the offeror);

(B) include cost or price to the Federal Government as an evaluation factor that must be considered in the evaluation of proposals; and

(C) disclose to offerors whether all evaluation factors other than cost or price, when combined, are--

(i) significantly more important than cost or price;

(ii) approximately equal in importance to cost or price; or

(iii) significantly less important than cost or price.

41 U.S.C. § 3306.[8] Protestor also argues that:

> Agency noncompliance with the Statutory mandate of 41 U.S.C. § 3306(c)(1)(C) is more than an *alleged impropriety* which can be waived by categorical application of the prudential timeliness Bid Protest Regulation devised by GAO and then subsequently considered in *Blue & Gold Fleet*. There is a difference between Agency noncompliances with Agency Requirements and Regulations, noncompliances, which can be considered as *alleged improprieties*, and Agency noncompliances with Statutes, Statutory mandates which cannot be waived.

(emphasis in original).[9]

---

[8] Defendant indicates that "it is worth noting that 41 U.S.C. § 3306(c)(1)(C), the statute relied upon by Visual Connections, specifically applies to 'competitive proposals,'" and defendant argues, citing to <u>Systems Plus, Inc. v. United States</u>, 68 Fed. Cl. at 209-10, that the Court of Federal Claims "recognized that FSS procurements conducted under FAR Part 8.4 are not 'competitive proposals' like negotiated procurements under FAR Part 15." Defendant also argues that "unlike FAR Part 15, FAR Part 8.4 contains no requirement that agencies disclose the relative importance of the price and non-price factors."

[9] Protestor also claims that the RFQ did not address the relative importance of the technical and price factors.  As noted above, the parties agree that RFQ did not address the relative importance of the price and the non-price factors.  Although the court does not address the merits of the protest, even if the court agreed with protestor that the relative importance of the terms was not clear, the court notes that the RFQ indicated that "[t]he quote(s) representing the best value will be selected." As indicated by the Federal Circuit, "[i]t is well-established that contracting officers have a great deal of discretion in making contract award decisions, particularly when, as here, the contract is to be awarded to the bidder or bidders that will provide the agency with the best value." <u>Banknote Corp. of Am. Inc. v. United States</u>, 365 F.3d 1345, 1355 (Fed. Cir. 2004) (citations omitted); <u>see also</u> <u>E.W. Bliss Co. v. United States</u>, 77 F.3d 445, 449 (Fed. Cir. 1996) ("Procurement officials have substantial discretion to determine which proposal represents the best value for the government."); <u>Akal Sec., Inc. v. United States</u>, 103 Fed. Cl. 310, 329 (2011); <u>Brooks Range Contract Servs., Inc. v. United States</u>, 101 Fed. Cl. 699, 707 (2011) ("[A] plaintiff's burden 'is elevated where the solicitation contemplates award on a "best value" basis.'" (internal citations omitted)); <u>PlanetSpace Inc. v. United States</u>, 96 Fed. Cl. 119, 125 (2010) (citing <u>Galen Med. Assocs., Inc. v. United States</u>, 369 F.3d 1324, 1330 (Fed. Cir.), <u>reh'g</u> <u>denied</u> (Fed. Cir. 2004) ("An agency's contract award is thus least vulnerable to challenge when based upon a best value determination.")).

With reference to protestor's argument that <u>Blue & Gold's</u> waiver analysis does not apply to statutory violations, defendant claims "[t]his position is wholly unsupported by the law." Defendant correctly notes that "[i]n *Blue & Gold Fleet*, the Federal Circuit did not exclude errors based upon statutory requirements from the waiver rule." Moreover, as indicated by defendant, "*Blue & Gold Fleet* itself involves an alleged statutory violation, there the applicability of the Service Contract Act." (citing <u>Blue & Gold Fleet, L.P. v. United States</u>, 492 F.3d at 1315).

In <u>Blue & Gold Fleet, L.P. v. United States</u>, the plaintiff challenged the National Park Service's award of a contract to Hornblower Yachts, Inc. (Hornblower) for ferry services to Alcatraz Island.  <u>See</u> <u>Blue & Gold Fleet, L.P. v. United States</u>, 492 F.3d at 1310-11. The plaintiff argued that Hornblower's proposal did not include employee wage and benefits information required by the Service Contract Act, thus making the Park Service's evaluation of the cost of Hornblower's proposal flawed.  <u>See id.</u> at 1312.  The Federal Circuit acknowledged that "[b]y statute, the Park Service must 'evaluate  . . . proposals and make an award based solely on the factors specified in the solicitation.'" <u>Id.</u> at 1313 (quoting 10 U.S.C. § 2305(b)(1)). Moreover, the Federal Circuit acknowledged that "[i]n this case, it is true that the decision not to apply the Service Contract Act to the contract may have influenced the evaluation of the proposals; however, the Park Service made this decision during the solicitation, not evaluation, phase of the bidding process." <u>Id.</u> The Federal Circuit noted that the solicitation "did not include any requirement that the bidders consider the Service Contract Act," <u>id.</u>, and that the plaintiff had not raised any objection to the exclusion of Service Contract Act requirements from the Solicitation prior to the submission of proposals.  Therefore, the United States Court of Appeals for the Federal Circuit found that the plaintiff actually was challenging the terms of the solicitation, not the agency's evaluation of Hornblower's proposal.  <u>See id.</u>

Therefore, it appears that the Federal Circuit did not limit its decision in <u>Blue & Gold</u> to non-statutory violations.  Moreover, in the years since the <u>Blue & Gold</u> decision, the Federal Circuit has expanded the waiver rule. In <u>COMINT</u>, the Federal Circuit expanded the waiver rule, noting that "[t]he same policy underlying <u>Blue & Gold</u> supports its extension to all pre-award situations," <u>COMINT Sys. Corp. v. United States</u>, 700 F.3d at 1382, and indicated that "assuming that there is adequate time in which to do so, a disappointed bidder must bring a challenge to a solicitation containing a patent error or ambiguity prior to the award of the contract." <u>Id.</u> Recently, in <u>Bannum</u>, the Federal Circuit found waiver applied even when the protestor had previously indicated its dissatisfaction with the solicitation. <u>See</u> <u>Bannum, Inc. v. United States</u>, 779 F.3d at 1380. The Federal Circuit in <u>Bannum</u> indicated that "[i]t is undisputed that the government received notice of Bannum's dissatisfaction with the PREA-compliance requirement before awards were made. We conclude, however, that mere notice of dissatisfaction or objection is insufficient to preserve Bannum's defective-solicitation challenge." <u>Id.</u> As the Federal Circuit in <u>Bannum</u> explained, "[h]aving failed to follow any of the various protest procedures available to bidders for swiftly resolving objections to the terms of the solicitation, Bannum cannot raise the same challenge in the Court of Federal Claims now that an award has been made. Bannum waived the solicitation challenge by not properly

raising it before the close of bidding." Id. at 1381 (citing Blue & Gold Fleet, L.P. v. United States, 492 F.3d at 1314).

Protestor also cites to Missouri Pacific Railroad Co. v. United States, 214 Ct. Cl. 623, 558 F.2d 596 (1977), for the proposition that "[t]he requirements imposed by Treasury regulations must be distinguished from those imposed by statute; the former requirements may be waived while the latter may not." 214 Ct. Cl. at 623, 558 F.2d at 599. Defendant claims that "Visual Connections's reliance on *Missouri Pacific Railroad Co. v. United States,* 558 F.2d 596 (Ct. Cl. 1977) is also misplaced." In Missouri Pacific Railroad, the United States Court of Claims determined that a statutory requirement of filing a timely claim for income tax refund "cannot be waived." Missouri Pac. R.R. Co. v. United States, 214 Ct. Cl. at 623, 558 F.2d at 599. From this 1977 tax case, protestor asserts that "[t]here is a difference between Agency noncompliances with Agency Requirements and Regulations, noncompliances which can be considered as *alleged improprieties*, and Agency noncompliances with Statutes, Statutory mandates which cannot be waived." (emphasis in original). Defendant claims that "[s]imply put, the distinction between an agency's ability to waive statutory requirements and its own regulations is not relevant in any way to the waiver rule announced *in Blue & Gold Fleet."* Defendant explains, had Visual Connections timely protested the terms of the RFQ, and if protestor had been successful in its challenge, "AHRQ would have been required to amend its RFQ such that the alleged statutory violation was eliminated from the RFQ." The remedy, as articulated by defendant, would have been a timely challenge to the RFQ.

The court finds no difference in Visual Connections' case and the series of waiver cases decided by the Federal Circuit. Moreover, as defendant notes, if protestor believed that there may have been a statutory violation with the RFQ, the time for raising that challenge would have been before the proposals were due. The court determines that an offeror, such as Visual Connections, which has the opportunity to object to the terms of a government solicitation containing an alleged patent error, including a statutory violation, and fails to do so prior to award, waives the ability to raise the same objection in a bid protest case filed in this court. See Blue & Gold Fleet, L.P. v. United States, 492 F.3d at 1314.

Alternatively, protestor asserts that the RFQ is "facially ambiguous," and, "therefore it was a latent ambiguity which triggered no duty to inquire." Protestor argues the RFQ was facially ambiguous because "[t]he Evaluation Factors and Evaluation Schema announced by Defendant United States Department of Health & Human Services' AHRQ's Request for Quotations entirely follow the precepts set out for a Simplified Procedures Acquisition competed among the many holders of Multiple Award Schedule Contracts," while protestor also argues, "[b]ut it is equally reasonable to have concluded that the announced conditions for this Request for Quotations (an Acquisition greater than $5,000,000 set-aside and restricted only to those Offerors which also are Service-Disabled, Veteran-Owned Small Business Concerns) precluded the use of Simplified Acquisition Procedures." Protestor quotes from States Roofing Corp. v. Winter for the proposition that:

We agree with States Roofing that any ambiguity in the contract was latent, rather than patent. As precedent explains, there must be a glaring conflict or obvious error in order to impose the consequences of misunderstanding on the contractor. See HPI/GSA 3C, LLC v. Perry, 364 F.3d 1327, 1334 (Fed. Cir. 2004) ("Where an ambiguity is not sufficiently glaring to trigger the patent ambiguity exception, it is deemed latent and the general rule of contra proferentem applies."); Blount Bros. Const. Co. v. United States, , 346 F.2d 962, 973, 171 Ct. Cl. 478 (Ct. Cl. 1965) ("[Contractors] are not expected to exercise clairvoyance in spotting hidden ambiguities in the bid documents, and they are protected if they innocently construe in their own favor an ambiguity equally susceptible to another construction, for . . . the basic precept is that ambiguities in contracts drawn by the Government are construed against the drafter.").

States Roofing Corp. v. Winter, 587 F.3d 1364, 1372 (Fed. Cir. 2009).[10]

"A solicitation term is ambiguous if 'more than one meaning is reasonably consistent with [its] language.'" Furniture by Thurston v. United States, 103 Fed. Cl. 505, 511 (2012) (quoting Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 977 (Fed. Cir. 1996) (modification in original). The United States Court of Appeals for the Federal Circuit has stated that, "[t]o show an ambiguity [in contract language,] it is not enough that the parties differ in their respective interpretations of a contract term." NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004). In order to demonstrate ambiguity, the interpretations offered by both parties must "'fall within a "zone of reasonableness."'" Id. (quoting Metric Constructors, Inc. v. NASA, 169 F.3d 747, 751 (1999) (citations omitted)); see also Ace Constructors, Inc. v. United States, 499 F.3d 1357, 1361 (Fed. Cir. 2007) ("[I]n interpreting a solicitation, '[it] is ambiguous only if its language is susceptible to more than one reasonable interpretation. . . . If the provisions of the solicitation are clear and unambiguous, they must be given their plain and ordinary meaning.'" (quoting Banknote Corp. of Am., Inc. v. United States, 365 F.3d at 1353)).

As noted in a bid protest decision, "[a] patent ambiguity in a solicitation 'is one that is "obvious, gross, [or] glaring."'" CliniComp Int'l, Inc. v. United States, 117 Fed. Cl. at 738 (quoting NVT Techs., Inc. v. United States, 370 F.3d 1153, 1162 (Fed. Cir. 2004) (quoting H & M Moving, Inc. v. United States, 499 F.2d 660, 671 (Ct. Cl. 1974))) (alteration in original); see also States Roofing Corp. v. Winter, 587 F.3d at 1372. "A latent ambiguity 'is not apparent on the face of the solicitation and is not discoverable through reasonable or customary care.'" J.C.N. Constr., Inc. v. United States, 107 Fed. Cl. 503, 512 (2012) (quoting Guzar Mirbachakot Transp. v. United States, 104 Fed. Cl. 53, 65 (2012)). "'An ambiguity is latent if it is not apparent on the face of the solicitation and is not discoverable through reasonable or customary care.'" AM Gen., LLC v. United States, 115 Fed. Cl. 653, 670 (2014) (quoting Linc Gov't Servs. v. United States, 96 Fed. Cl. 672, 708 (2010)). The distinction between a latent ambiguity and a patent ambiguity is "critical for the

_____

[10] The court notes that States Roofing, like the other cases cited by protestor in its brief regarding this issue, are not bid protest cases, but are Federal Circuit decisions which have been appealed from the Board of Contract Appeals.

purpose of waiver, since "'a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection afterwards[.]'"" Archura LLC v. United States, 112 Fed. Cl. 487, 500 (2013) (quoting Lab. Corp. of Am. v. United States, 108 Fed. Cl. 549, 565–66 (2012) (quoting Blue & Gold Fleet, L.P. v. United States, 492 F.3d at 1315) (alteration in original). As noted in Archura, "[w]hether an ambiguity is patent or latent is a question of law, and a determination to be made on a case-by-case basis." Id. (citing Interstate Gen. Gov't Contractors, Inc. v. Stone, 980 F.2d 1433, 1435 (Fed. Cir. 1992)); see also CBY Design Builders v. United States, 105 Fed. Cl. 303, 327 (2012) ("Whether a provision in a solicitation is ambiguous, and whether an ambiguity is latent or patent, are also questions of law over which courts exercise independent review on a case-by-case basis.").

Although protestor argues that "[w]here conflicting interpretations are equally reasonable, then the ambiguity is latent, not patent," as noted above, and as pointed out by defendant, "[i]dentification of a contract term with 'more than one meaning [] reasonably consistent with the contract language," is merely the first step in identifying an ambiguity; the court must then determine if the ambiguity is patent or latent.'" (quoting Grumman Data Systems Corp. v. Dalton, 88 F.3d at 997) (alteration in original). Indeed, it is the court's role to determine if the ambiguity is patent or latent. See Archura LLC v. United States, 112 Fed. Cl. at 500; see also J.C.N. Constr., Inc. v. United States, 107 Fed. Cl. at 512 ("If the court determines that an ambiguity exists, it must then determine whether the ambiguity is patent or latent.").

Defendant correctly notes that protestor's claim of "conflicting interpretations" "just two sides of the same coin: Visual Connections contends that an offeror could have reasonably concluded (1) that the terms of the RFQ precluded the use are really simplified acquisition procedures; or (2) that the RFQ was subject to simplified acquisition procedures, even though this result would violate Statute." (internal citations and quotation omitted). Therefore, defendant argues that "[u]nder either interpretation proffered by Visual Connections, the alleged violation of 41 U.S.C. § 3305(a)(2) was apparent on the face of the RFQ. Accordingly, Visual Connections is alleging a patent error to the terms of the RFQ which must have been challenged prior to AHRQ's receipt of quotes."

Moreover, protestor undermines its own argument that the ambiguity was latent. In its conclusion to its response to defendant's motion to dismiss, protestor seeks a declaration that the award to intervenor "is unlawful because Request for Quotations Number AHRQ-15-10003 makes use of Simplified Acquisition Procedures in violation of 41 U.S.C. § 3305(a)(2)," and claims that "[t]he terms of this Request for Quotations themselves demonstrate this Acquisition does not qualify as a Simplified Procedures Acquisition."[11] As noted above, when arguing that AHRQ was not in compliance with the relevant statutes, protestor claims AHRQ committed an "obvious Statutory violation

---

[11] Defendant argues that, "[p]utting aside the fact that FSS acquisitions are not simplified acquisitions under 41 U.S.C. § 3305, Visual Connections is alleging a patent error with the terms of the RFQ, not a latent ambiguity or defect."

before July 28th, 2014, the date set for receipt of Quotations." (emphasis added). If the violation was obvious, it would be a patent ambiguity, not a latent one, and should have been raised before proposals were submitted.  Any ambiguity in the RFQ was patent, and the waiver analysis discussed above applies.

## CONCLUSION

As determined above, Visual Connections failed to challenge the terms of the RFQ before submitting its proposal, and, the alleged ambiguity in the RFQ should be classified as a patent one. Therefore, protestor has waived its right to subsequently challenge the relative importance of the announced price and non-price evaluation factors in this court. Defendant's motion to dismiss is **GRANTED**.  Protestor's complaint is **DISMISSED**.  The Clerk of the Court shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED**.

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**